UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ELIZABETH Z.,[1]

                               Plaintiff,                      DECISION AND ORDER

-vs-

                                                           1:21-CV-0121 (CJS)

COMMISSIONER OF SOCIAL SECURITY,

                               Defendant.

_____

## I. INTRODUCTION

In January 2021, Elizabeth Z. ("Claimant") filed this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of the Commissioner of Social Security's ("Commissioner") denial of her application for Disability Insurance Benefits ("DIB"). Compl., Jan. 22, 2021, ECF No. 1. Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). Pl.'s Mot., Jan. 19, 2022, ECF No. 14; Def.'s Mot., Mar. 21, 2022, ECF No. 16. For the reasons set forth below, Claimant's motion for judgment on the pleadings [ECF No. 14] is denied, the Commissioner's motion [ECF No. 16] is granted, and the Clerk of Court is directed to close this case.

---

[1] The Court's Standing Order issued on November 18, 2020, directs that, "in opinions filed pursuant to . . . 42 U.S.C. § 405(g), in the United States District Court for the Western District of New York, any non-government party will be identified and referenced solely by first name and last initial."

## II. BACKGROUND

The Court assumes the reader's familiarity with the facts and procedural history in this case, and therefore addresses only those facts and issues which bear directly on the resolution of the motions presently before the Court.

A. Claimant's Applications

Claimant filed a DIB application in November 2017, alleging a disability onset date of April 8, 2016. Transcript ("Tr."), 304,[2] Jul. 21, 2021, ECF No. 8. In so doing, she indicated that her ability to work was limited by back pain and arthritis. Tr. 307. In February 2018, the Commissioner's state agency medical consultant, Dr. Miller, D.O., reviewed Claimant's records, and found that although her spine disorder was a severe impairment, the totality of the evidence in the record indicated that she could perform substantial gainful activity with sedentary exertional limitations. Tr. 102. Claimant's application was therefore denied at the initial level. Tr. 103.

B. Claimant's Hearings Before the ALJ

After the Commissioner denied her applications, Claimant appeared with counsel on June 26, 2020 for a hearing before an Administrative Law Judge ("ALJ"). Tr. 46. In response to the ALJ's question as to why she was unable to work, Claimant stated as follows:

> I have lower-back pain. I have herniated dis[c]s in my back and I have herniate[d] dis[c]s in my neck and shoulders. I have a tear in my left hip and I also was diagnosed with fibromyalgia and I have arthritis.
>
> * * *
>
> . . . I have constant pain every day. I have a problem standing longer than

---

[2] The page references from the transcripts are to the bates numbers inserted by the Commissioner, not the pagination assigned by the Court's CM/ECF electronic filing system.

10 or 15 minutes. I have a problem bending, kneeling and squatting. The medication that I'm on makes m[e] tired and drowsy. I get nauseous from it. I constantly have to take naps or lay down, either ice my back or a heating pad. I can't drive for long distances in vehicles because of my pain. It's hard for me to shower or shave my legs or that sort of . . . every day life, just basic little things in life. It's hard for me to do because I have constant pain.

Tr. 49–50.

Claimant testified that in 2011 (Tr. 65), she was working for Dunn Tire, and packing month-end paperwork into a box, when she tried to move the box and felt a "pop" in her back, couldn't stand up, and fell to the floor. Tr. 52–53. Since that time, she has had constant lower back pain that radiates to her left leg and hip, and causes tingling and numbness. Tr. 53. She also has pain in her shoulders and upper neck, numbness and tingling in both of her arms and hands, and headaches from the pain in her neck and shoulders. Tr. 54. Claimant stated that she finds it hard to grab on to things because she has tingling and numbness, and her hands are weak. Tr. 55. Her headaches occur every day, but are severe about 15 days of the month. Tr. 56. In addition to physical impairments, the pain causes Claimant's anxiety to escalate, so she has a hard time concentrating. Tr. 59.

With respect to her activities of daily living, Claimant testified that she lives with her husband, who has to help her get dressed, take a shower or bath, get her shoes on, and even grab a gallon of milk from the refrigerator. Tr. 55. She stated she has tingling down the back of her leg, "like pulling," so she has a hard time when she walks. Tr. 65. Moreover, due to her back, shoulder, and neck pain, Claimant said she has to recline and elevate her legs for three to four hours a day for rest, or to apply heat or cold to her pain points. Tr. 58.

3

Regarding her education and work history, Claimant testified that she only completed school through the 11ᵗʰ grade, and dropped out when her father died. Tr. 64. Prior to 2016, she had worked at Dunn Tire as an office clerk and receptionist from 2006 to 2015. Tr. 70 She answered the phones, and did accounts payable, accounts receivable, filing and mail room work. Tr. 70. Following her accident in 2011, Claimant tried to keep working, but had to reduce her hours because she stated she couldn't perform her job. Tr. 51. She said she would have to miss work two or three days each week for doctor appointments, or to leave early due to her pain. Tr. 51. She was unable to sit for long periods, had a hard time concentrating and focusing on her work, and had to frequently get up and leave her workstation because she needed a break. Tr. 51, 58. Finally, Claimant was informed by the company's human resources department that she wasn't performing her job to what they needed, so they had to let her go on full worker's compensation. Tr. 51.

In addition to Claimant's testimony, the ALJ also took testimony from an impartial vocational expert (VE) at the hearing. Using the Dictionary of Occupational Titles (DOT), the VE classified Claimant's position as a composite job of an accounting clerk and a receptionist, both sedentary work as listed but medium work as performed, given Claimant's duties to lift parts, supplies, mail, or FedEx or UPS boxes. Tr. 71. In response to a hypothetical proposed by the ALJ that included a sedentary range of work with some exertional limitations, the VE testified that the person would be able to perform Claimant's past relevant work "as it's normally done in the economy," and that there were other jobs in significant numbers in the national economy that the person could perform. Tr. 73–74. However, the VE testified that she has not encountered sedentary work that allows for an

individual to elevate their legs to waist level one to two hours each day, and that an employee would be terminated if that individual was not able to maintain on task behavior for at least 90% of the workday. Tr. 74–75.

C. The ALJ's Decision

In July 2020, the ALJ issued a decision finding that Claimant was not disabled, and therefore did not qualify for DIB benefits. Tr. 37.

To begin with, the ALJ found that Claimant met the insured status requirements for DIB benefits[3] through December 31, 2021. Tr. 23. Then, at step one of the Commissioner's "five-step, sequential evaluation process,"[4] the ALJ found that Claimant had not engaged in substantial gainful activity since the alleged disability onset date of April 8, 2016. Tr. 23.

At step two, the ALJ determined that Claimant has had the following severe impairments: myalgia, spondylosis of the spine with radiculopathy, left labral hip tear, and

_____

[3] Claimants must meet the insured status requirements of the Social Security act to be eligible for DIB benefits. See 42 U.S.C. § 423(c); 20 C.F.R. § 404.130.

[4] In addition to the insured status requirements for DIB benefits, the Social Security Administration has outlined a "five-step, sequential evaluation process" that an ALJ must follow to determine whether a claimant has a "disability" under the law:

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014) (citing *Burgess v. Astrue*, 537 F.3d 117, 120 (2d Cir. 2008); 20 C.F.R. § 404.1520(a)(4)(i)–(v), § 416.920(a)(4)(i)–(v)). The claimant bears the burden of proof for the first four steps of the process. 42 U.S.C. § 423(d)(5)(A); *Melville v. Apfel*, 198 F.3d 45, 51 (2d Cir. 1999). At step five, the burden shifts to the Commissioner only to demonstrate that there is other work in the national economy that the claimant can perform. *Poupore v. Asture*, 566 F.3d 303, 306 (2d Cir. 2009).

fibromyalgia. Tr. 23. In addition, he found that Claimant's medically determinable physical impairment of varicose veins was non-severe, and that other physical impairments listed in the record such as treatment for toe pain from cellulitis, an ingrown toenail, and an upper respiratory infection, either occurred outside of the period under consideration or presented no signs and symptoms expected to last at least twelve months. Tr. 24. With respect to Claimant's mental impairments of anxiety disorder and panic attacks, the ALJ found that they were non-severe because they caused no more than "mild" limitation in any of the functional areas,[5] and the evidence showed no more than a mild limitation in Claimant's ability to do basic work activities. Tr. 24–25. The ALJ did not discuss Claimant's cervical spine at step two.

At step three, the ALJ found that the severity of Claimant's physical or mental impairments did not meet or medically equal the criteria of listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25–26. Then, before proceeding to step four, the ALJ carefully considered the entire record and determined that Claimant had the residual functional

---

[5] When a claimant alleges a mental impairment, the Commissioner's regulations require the ALJ to apply a "special technique" at the second and third steps of the five-step evaluation process. *Petrie v. Astrue*, 412 F. App'x 401, 408 (2d Cir. 2011) (citing 20 C.F.R. § 404.1520a). First, the ALJ must evaluate the claimant using "Paragraph A" criteria to evaluate the claimant's pertinent symptoms, signs, and laboratory findings and determine whether he or she meets the requirements of one of the mental impairments listed in 20 C.F.R. § Pt. 404, Subpt. P, App. 1, 12.00 ("App'x 1, § 12.00"). *See* 20 C.F.R. § 404.1520a(b)(1). If the claimant does have such an impairment, the ALJ must assess the claimant's limitations in four broad areas of mental functioning that constitute the Paragraph B criteria: (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage oneself (collectively, the "Paragraph B criteria"). 20 C.F.R. § 404.1520a(c)(3).

The ALJ must rate the degree of the claimant's limitation in each of the Paragraph B criteria using a five-point scale: none, mild, moderate, marked, or extreme. 20 C.F.R. § 404.1520a(c)(4). To satisfy the "Paragraph B" criteria, a claimant's mental disorder must result in extreme limitation of one, or marked limitation of two, of the four criteria. App'x 1, § 12.00F(2). After rating the degree of functional limitation resulting from the claimant's mental impairment(s), the ALJ must then determine the severity of the mental impairment(s). 20 C.F.R. § 404.1520a(d).

capacity[6] ("RFC") to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), "except the [C]laimant can occasionally climb ramps or stairs, but never ladders, ropes, or scaffolds, and the [C]laimant can occasionally balance, stoop, kneel, crouch, or crawl." Tr. 26.

Based on this RFC, on Claimant's age and education, and on the testimony of the impartial VE, the ALJ found at step four that Claimant was capable of performing her past relevant work as an accounting clerk and receptionist. Tr. 35. Further, the ALJ found that significant numbers of other jobs existed in the national economy that Plaintiff could perform, such as a document preparer, a touch up screener, and an escort vehicle driver. Tr. 36. Consequently, the ALJ determined that Claimant was not disabled, and not entitled to DIB benefits. Tr. 37.

On November 24, 2020, the Commissioner's Appeals Council denied Claimant's request to review the ALJ's decision. Tr. 1. The ALJ's decision thus became the "final decision" of the Commissioner.

### III. LEGAL STANDARD

Under 42 U.S.C. § 423(d), a claimant is disabled and entitled to disability insurance benefits if he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 405(g) defines the process and scope of judicial review of the Commissioner's final decision as to whether a claimant has a disability that would

---

[6] "Residual functional capacity" ("RFC") means the most that the claimant can still do in a work setting despite the limitations caused by the claimant's impairments. 20 C.F.R. § 404.1545, § 416.945.

entitle him or her to an award of benefits. The fourth sentence of § 405(g) empowers the reviewing court to enter "a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." The sixth sentence authorizes the reviewing court to "order additional evidence to be taken before the Commissioner of Social Security . . . upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." *See Tirado v. Bowen*, 842 F.2d 595 (2d Cir. 1988).

"The entire thrust of judicial review under the disability benefits law is to ensure a just and rational result between the government and a claimant, without substituting a court's judgment for that of the [Commissioner], and to reverse an administrative determination only when it does not rest on adequate findings sustained by evidence having rational probative force." *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988) (internal citation and quotation marks omitted). Therefore, it is not the reviewing court's function to determine *de novo* whether the claimant is disabled. *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012). Rather, "[t]he threshold question is whether the claimant received a full and fair hearing." *Morris v. Berryhill*, 721 F. App'x 25, 27 (2d Cir. 2018). Then, the reviewing court must determine "whether the Commissioner applied the correct legal standard[s]." *Tejada v. Apfel*, 167 F.3d 770, 773 (2d Cir. 1999). Provided the claimant received a full and fair hearing, and the correct legal standards are applied, the district court's review is deferential: a finding by the Commissioner is "conclusive" if it is supported by "substantial evidence." 42 U.S.C. § 405(g).

"Whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (internal citation and quotation marks omitted). Consequently, once an ALJ finds facts, a reviewing court can reject those facts only if a reasonable factfinder would have to conclude otherwise. *See Brault*, 683 F.3d at 448.

## IV. DISCUSSION

In her motion for judgment on the pleadings, Claimant maintains that the Commissioner's RFC determination is not based upon substantial evidence in the record, and is founded upon legal error. Pl. Mem. of Law, 20, Jan. 19, 2022, ECF No. 14-1. Specifically, Claimant argues that the ALJ erred by failing to make any findings regarding her cervical spine impairment in the written decision, that the medical opinions the ALJ relied upon in formulating Claimant's RFC were "stale," and that the ALJ failed to properly evaluate multiple medical opinions which conflicted with his RFC findings. Pl. Mem. at 20–27. The Commissioner maintains that the ALJ properly evaluated the totality of the evidence, and supported his conclusions with substantial evidence. Def. Mem. of Law, Mar. 21, 2022, ECF No. 16-1.

A. Claimant's Cervical Spine Impairment

An MRI scan of Claimant's cervical spine was done in January 2020, in an attempt to determine why she may be having neck pain radiating to both her shoulders and hands. Tr. 926. The study revealed "small central to left paracentral C5-6 disc herniation . . . moderate broad-based C6-7 disc herniation . . . [and] a 1.5 mm C7-T1 spondylolisthesis."

*Id.* In addition, in his June 2020 treatment notes, one of Claimant's pain management physicians, Dr. Bernard Hsu, listed "cervical disc displacement" in his diagnoses, and noted that Claimant was experiencing pain in her neck, upper back, shoulders, and right arm, and was getting constant headaches from the pain. Tr. 1280–81. He also noted that Claimant was advised to see a surgeon, but that she wanted to continue to try conservative treatments. Tr. 1281. Dr. Hsu's physical examination revealed that the range of motion of Claimant's cervical spine was mildly limited in regards to flexion and extension, and moderately limited with respect to right lateral bending and rotation. Tr. 1281.

Despite this evidence in the record, the ALJ did not discuss any limitations in Claimant's cervical spine at step two of the sequential evaluation process. Tr. 23–25. Although the ALJ did later acknowledge the cervical spine MRI and its findings, as well as Claimant's June 2020 visit to Dr. Hsu, at later steps of his decision, the ALJ ultimately found that no limitations were warranted aside from those listed in his RFC determination. Claimant maintains that the ALJ's failure to discuss the cervical spine findings at step two was legal error. Pl. Mem. of Law at 20.

### Legal Principles

If the ALJ determines at step one of the five-step sequential evaluation process that a claimant is "not doing substantial gainful activity," then the regulations require the ALJ at step two to determine whether the claimant has "a medically determinable physical or mental impairment(s) . . . ." 20 C.F.R. § 404.1521 (citing § 404.1520(a)(4)(ii)). To demonstrate the existence of a medically determinable impairment, the claimant must prove he or she has an impairment that "result[s] from anatomical, physiological, or

psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." § 404.1521. That is, the impairment must be "established by objective medical evidence from an acceptable medical source." § 404.1521.

Even so, the Second Circuit has consistently found that an ALJ's failure to consider some of a claimant's physical or mental impairments at step two of the evaluation process may be harmless error where the ALJ identifies other "severe impairments" at step two, and specifically considers the neglected impairments in subsequent steps of the sequential evaluation process. *Reices-Colon v. Astrue*, 523 F. App'x 796, 798 (2d Cir. 2013) (citing *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010)).

*Application*

Based on the circumstances of the present case, the Court disagrees with Claimant's argument that the ALJ's failure to expressly consider Claimant's cervical spine impairment at step two of the sequential evaluation process constitutes reversible legal error. Although the ALJ did not identify Claimant's cervical spine as a medically determinable impairment at step two, as indicated above, the ALJ did identify several other "severe impairments," including myalgia, spondylosis of the spine with radiculopathy, and fibromyalgia. Tr. 23. Consequently, the ALJ proceeded with the subsequent steps of the five step sequential evaluation process, where he specifically considered the findings of Claimant's January 2020 cervical spine MRI (Tr. 32), and her visit to Dr. Hsu in June 2020 (Tr. 33) in the context of a thorough review of the record evidence between her termination of employment in 2016 and the date of the ALJ's decision. *See* Tr. 28–33.

11

Claimant's assertion that the ALJ's discussion of the cervical spine MRI and Dr. Hsu's treatment notes was legally insufficient or "gives cause for concern that portions of the decision were written at different times," is unpersuasive.[7] Pl. Mem. of Law at 21. Not only did the ALJ expressly acknowledge the findings of the MRI of Claimant's cervical spine in his explanation of his RFC determination, he also discussed those findings as they related to the other medical treatments that Claimant was receiving in 2020. The ALJ observed that the findings of the other imaging studies that were performed at the same time as Claimant's cervical spine scans – on Claimant's hips, hand, foot, and knee – showed no fractures or abnormalities. Tr. 32 (citing Tr. 883–89). He further noted that while the MRI showed a disc herniation and spondylolisthesis, physical examinations at appointments with Claimant's rheumatologist showed that she was exhibiting normal gait, had 5/5 strength in her upper and lower extremities, and was "neurologically intact." Tr. 32 (citing Tr. 906–11, 1050, and 1060). He indicated that treatment records from her pain management provider shows that Claimant displayed normal SLR, 5/5 strength, and ambulates independently. Tr. 32 (citing 1076–85). Lastly, he pointed out that at her appointment with Dr. Hsu, Claimant showed mild to moderate limitations in her cervical and lumbar spine, but again showed 5/5 strength, and that her SLR was negative bilaterally, which the ALJ believed to support his finding of Claimant's ability to do sedentary work. Tr. 33 (discussing Tr. 1280–82).

---

[7] There are some courts in this circuit that have found that the "step two harmless error doctrine" is applicable only to cases involving an error at step two in the ALJ's conclusion on the issue of severity, and that it does not apply where, like here, the ALJ failed to identify a medically determinable impairment, or found that the impairment was not medically determinable. *See Isacc R. v. Kijakazi*, No. 3:20-CV-1172 (ATB), 2022 WL 306364, at *7 (N.D.N.Y. Feb. 2, 2022) (collecting cases). The reasoning of this position is also unpersuasive in the present case, in which the ALJ clearly considered Claimant's cervical spine impairment at later stages of the evaluation process.

Moreover, notwithstanding Claimant's disagreement with the ALJ's RFC determination, the Court finds that the RFC is supported by substantial evidence. With respect to the evidence in the record, it is not the Court's role to conduct a *de novo* review to determine whether the claimant is disabled, but simply to determine whether the Commissioner's conclusions were supported by "substantial evidence," which means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *See, e.g., Cage v. Comm'r of Soc. Sec*., 692 F.3d 118, 122 (2d Cir. 2012) (multiple internal citations and quotations omitted). Here, the ALJ concluded that an RFC determination of sedentary work was appropriate, "given claimant's conservative treatment, consisting of trigger point injections, physical therapy, chiropractic care, massage and medication management, and declining to pursue more aggressive treatment modalities." Tr. 33. The ALJ supported this conclusion with a four-page discussion of the evidence that discussed Plaintiff's consistent reports of heightened pain levels, but also cited consistent examination records that "reflect[ ] that the claimant is not as limited as alleged." Tr. 28.

For instance, the ALJ observed that records from Claimant's primary care provider, Nurse Practitioner Linda Miller, indicated that from February 2018 through the summer of 2019 and thereafter, Claimant "report[ed] pain at 6/10, and worse with weather and prolonged twisting, bending and prolonged sitting/standing, [but] that trigger point injections were effective in reducing her pain 40-50% and lasting 3-4 weeks, and on examination . . . shows normal gait and strength at 5/5, and denied weakness in [her] extremities." Tr. 30 (citing treatment notes from N.P. Miller at Tr. 627, 630, 641, 644, 648, 652, 655). In addition, the ALJ pointed out that even after Claimant was diagnosed with

myofascial cervical pain due to her motor vehicle accident in September 2019 (Tr. 31, citing Tr. 1122–31), she continued to walk with normal gait, show full strength in upper and lower extremities, and continue on conservative treatments (Tr. 32, citing Tr. 1271–75; Tr. 32–33, citing Tr. 1280–82).

Lastly, even if Claimant is correct that the ALJ erroneously determined that she was capable of performing her past relevant work, the Court finds that his conclusion that there were other jobs in significant numbers in the national economy that Claimant could perform was supported by substantial evidence. Pl. Mem. of Law at 22. As noted above, the ALJ took testimony from an impartial VE at Claimant's hearing. Tr. 71–75. The VE testified, in pertinent part, that a claimant with limitations similar to those identified in the ALJ's RFC could perform sedentary jobs as a document preparer, touch-up screener, and escort vehicle driver. Tr. 73. The jobs are consistent with the DOT. Tr. 73.

Therefore, the Court finds that the ALJ's conclusion was supported by substantial evidence, and Claimant's first argument is without merit. *See Jones v. Sullivan*, 949 F.2d 57, 59 (2d Cir. 1991) (quoting *Valente v. Secretary of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984) (a reviewing court should not "substitute its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon de novo review.")).

B. "Stale" Opinion Evidence

In assessing the medical opinion evidence in the record, the ALJ found the opinion of Dr. James Faulk, M.D., who performed an independent orthopedic medical evaluation on Claimant in 2017 for worker's compensation program purposes, to be persuasive. Tr. 34, 1110. The ALJ stated that despite being rendered for a different program, Dr. Faulk's

14

opinion was supported by a detailed file review and examination of Claimant, and was consistent with the longitudinal treatment records. Tr. 34. In addition, the ALJ found the 2018 opinion of Dr. Miller, D.O., the state agency medical consultant, to be "somewhat persuasive," because although there was no treatment or examining history, Dr. Miller's opinion was generally consistent with the medical evidence of record. Tr. 33. The ALJ did note, though, that the record shows that Claimant has physical limitations regarding postural activities that warrant greater restrictions than Dr. Miller opined. Tr. 34. The ALJ found that the other opinions he discussed – including a December 2019 opinion from Claimant's primary care provider, Nurse Practitioner Linda Miller – either lacked useful functional analysis or, in N.P. Miller's case, was not supported by N.P. Miller's own examinations or consistent with Claimant's testimony about her daily activities. Tr. 34.

Claimant observes that the two opinions the ALJ found persuasive were given before a car accident she was involved in in September 2019, and were therefore "stale." "Thus," Claimant argues, "the staleness of Dr. Faulk and Dr. Miller's opinions, and the ALJ's rejection of N.P. Miller's opinion post-motor vehicle accident . . . created a gap in the record that the ALJ was required to fill." Pl. Mem. of Law at 25. According to Claimant, the ALJ's failure to do so was error and left the ALJ's decision unsupported by substantial evidence. *Id.*

### Legal Principles

It is a well-established rule in the Second Circuit that, even when a claimant is represented by counsel, "the social security ALJ, unlike a judge in a trial, must on behalf of all claimants . . . affirmatively develop the record in light of the essentially non-adversarial nature of a benefits proceeding." *Lamay v. Comm'r of Soc. Sec.*, 562 F.3d

15

503, 508–09 (2d Cir. 2009); *Pratts v. Chater*, 94 F.3d 34, 37 (2d Cir. 1996). "Failure to sufficiently develop the administrative record results in the denial to claimant of a full and fair hearing and is thus grounds for remand." *Price ex rel. A.N. v. Astrue*, 42 F. Supp.3d 423, 432 (E.D.N.Y. 2014). However, the ALJ is not required to seek additional evidence when the record is "adequate for [the ALJ] to make a determination as to disability."[8] *Janes v. Berryhill*, 710 F. App'x 33, 34 (2d Cir. 2018) (quoting *Perez v. Chater*, 77 F.3d 41, 48 (2d Cir. 1996)).

Further, the Second Circuit has not recognized "an unqualified rule that a medical opinion is superseded by additional material in the record." *Camille v. Colvin,* 652 F. App'x 25, 28 n.4 (2d Cir. 2016). Certainly, remand is warranted where more recent evidence in the record directly contradicts older reports of a claimant's functioning on which the ALJ relied, and the ALJ has clearly failed to analyze the more recent evidence. *Blash v. Comm'r of Soc. Sec. Admin*., 813 F. App'x 642, 644–45 (2d Cir. 2020) (citing *Genier v. Astrue*, 606 F.3d 46, 50 (2d Cir. 2010)). Nevertheless, the key question is "whether there is substantial evidence to support the Secretary's determination" that a claimant is not or was not disabled during the relevant period. *Hidalgo v. Bowen*, 822 F.2d 294, 297 (2d Cir. 1987) (citing *Valente*, 733 F.2d at 1041). *See also Cook v. Comm'r of Soc. Sec.*, 818 F. App'x 108, 109–10 (2d Cir. 2020) ("[A]lthough there was no medical opinion providing the specific restrictions reflected in the ALJ's RFC determination, such evidence is not required when "the record contains sufficient evidence from which an ALJ can assess the [claimant's] residual functional capacity.") (internal citation omitted).

---

[8] A record is adequate to make a determination where there are no "obvious gaps," and a "complete medical history" exists. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

*Application*

In assessing Claimant's first argument above, the Court found that the ALJ's conclusions were supported by substantial evidence. Therefore, the key question for the Court's consideration regarding Claimant's claims that the ALJ relied on "stale" opinion evidence is whether there is more recent evidence in the record that directly contradicts older reports of a claimant's functioning, and which the ALJ has clearly failed to analyze. *Blash*, 813 F. App'x at 644–45. After a careful consideration of the record, the Court finds that although Claimant experienced additional pain and limitations in her cervical spine following her September 2019 motor vehicle accident, there is no gap in the record because that evidence does not directly contradict the opinions of Dr. Miller and Dr. Faulk, and in any event the more recent evidence was considered by the ALJ.

Most importantly, as discussed above, the ALJ did consider the medical evidence in the record following Claimant's 2019 accident. The ALJ cited the findings of Claimant's January 2020 MRI, and he specifically referenced the treatment notes of both Dr. Guzinski (Tr. 32, citing 871) and Dr. Hsu (Tr. 32, citing 1280–82), both of whom evaluated the condition of Claimant's neck and back. In addition, with respect to the opinion of Dr. Miller, the ALJ's decision acknowledged that "[Dr. Miller's] opinion was proffered early in the pendency of the claim," and that Claimant's postural limitations warrant greater restrictions than Dr. Miller opined. Tr. 33. Lastly, with respect to Dr. Faulk's opinion, the ALJ expressly considered the consistency of the opinion with the longitudinal treatment records, the objective findings upon examinations, and Claimant's activities of daily living, and found that the opinion was consistent. Tr. 34. Consequently, Claimant's second argument is without merit.

17

C. The ALJ's Treatment of Other Opinion Evidence

The ALJ specifically considered five opinions in his decision: the two "persuasive" opinions from Dr. Faulk and Dr. Miller discussed above, the unpersuasive December 2019 opinion of N.P. Miller, an October 2019 statement from chiropractor, Dr. Peter Guzinski, D.C., and a May 2020 assessment completed by Physician's Assistant Ann McGorry. Tr. 34. Claimant maintains that the ALJ's treatment of Dr. Guzinksi's and N.P. Miller's statements, respectively, was flawed because the ALJ failed to acknowledge earlier treatment records and opinions from both providers that were favorable to Claimant. Claimant therefore argues that "[b]y failing to acknowledge, let alone evaluate, N.P. Miller and Dr. Guzinski's [earlier] medical opinions, the ALJ committed legal error, warranting reversal and remand for further administrative proceedings." Pl. Mem. of Law at 30.

*Legal Principles*

Because the initial DIB claim in the present case was filed after March 27, 2017, the ALJ was required to apply 20 C.F.R. § 404.1520c to evaluate the opinion evidence in the record. § 404.1520c(c) lists a number of factors the Commissioner must consider when considering the medical opinions in a particular case, including: supportability, consistency, relationship of the source with claimant, length of treatment relationship, examining relationship and frequency of examination, purpose and extent of treatment relationship, the source's specialization, and other factors "that tend to support or contradict a medical opinion . . . ."

As the Second Circuit has noted,

The [new] regulations explain that when "evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings," the "most

18

important factors . . . are supportability . . . and consistency." *Id*. The regulations further require the agency to "explain how [it] considered the supportability and consistency factors for a medical source's medical opinions or prior administrative medical findings in [its] determination or decision." *Id*. § 404.1520c(b)(2).

*Loucks v. Kijakazi*, No. 21-1749, 2022 WL 2189293, at *1 (2d Cir. June 17, 2022).

Under the new regulations, an ALJ's failure to adequately explain how he or she considered the supportability and consistency of a medical opinion in the record is procedural error. *Loucks*, 2022 WL 2189293 at *2. However, even if the ALJ commits such an error, the reviewing court may affirm if "a searching review of the record assures us 'that the substance of the [regulation] was not traversed.'" *Loucks*, 2022 WL 2189293 at *2 (quoting *Estrella v. Berryhill*, 925 F.3d 90, 96 (2d Cir. 2019) (internal citation and quotation marks omitted)).

*Application*

In the present case, the ALJ stated that he "analyzed the opinion evidence in accordance with the criteria of 20 C.F.R. § 404.1527." Therefore, the ALJ committed procedural error. *See* 20 C.F.R. § 404.1520c. Nevertheless, a searching review of the record assures the Court that the substance of § 404.1520c was not traversed.

To begin with, the ALJ's consideration of the opinion evidence does address the supportability and consistency of each of the opinions he specifically discussed. The consideration of "supportability" means that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . ., the more persuasive the medical opinions . . . will be." § 404.1520c(c)(1). The consideration of "consistency" means that "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical

19

sources in the claim, the more persuasive the medical opinion(s) . . . will be." §
404.1520c(c)(2).

With respect to Dr. Miller's "somewhat persuasive" opinion that Claimant is capable
of sedentary work (Tr. 101–02), the ALJ stated that it is "generally *consistent* with the
medical evidence of record," and that "the record as a whole does not *support* the
allegations to the degree the claimant purports, [but] it does show she continues to have
physical limitations . . . which warrant greater restrictions than Dr. Miller opined . . . ." Tr.
33 (emphasis added). Similarly, the ALJ's discussion of Dr. Faulk's "persuasive" opinion
that Claimant is able to do a desk type job full-time noted that the opinion is *"supported*
by Dr. Faulks' detailed file review and examination," and that "the opinion is *consistent*
with the longitudinal treatment records . . . including the claimant's conservative and
routine medication treatment . . . ." Tr. 34 (emphasis added).

Although the ALJ found the opinions of Dr. Guzinski, P.A. McGorry, and N.P. Miller
to be "not persuasive," his discussion of these opinions also did not "traverse" the
substance of § 404.1520c. Most significantly, the ALJ's consideration of N.P. Miller's
December 2019 opinion specifically addresses supportability and consistency when it
states that "the correlating physical examinations do not *support* such significant
limitations, and the opinion is not *consistent* with claimant's own testimony regarding her
wide-range activities of daily living." Tr. 34 (discussing Tr. 932; emphasis added).

Claimant maintains in the present motion that the ALJ's finding in this regard is
erroneous, and points to several medical records that she believes to show that the
limitations identified in N.P. Miller's opinion "are fully consistent with N.P. Miller's objective
findings . . . as well as with [Claimant]'s hearing testimony." Pl. Mem. of Law at 26.

However, the Court defers to the ALJ's resolution of the conflicting evidence in the record. *See, e.g., Veino v. Barnhart*, 312 F.3d 578, 588 (2d Cir. 2002) (finding that where the "record plainly contained conflicting psychological evaluations of Veino's present condition . . . it was within the province of the ALJ to resolve that evidence").

The record is clear that the ALJ considered N.P. Miller's treatment notes. *See* Tr. 30–31 (discussing N.P. Miller's notes between 2015–19 at Tr. 512–13, 536–37, 624, 627, 630, 641, 644, 652, and 655). Notwithstanding N.P. Miller's statement in some of her treatment notes that Claimant is not able to work, the ALJ has cited substantial evidence to support his conclusions that "there are inconsistencies in the record that diminish the persuasiveness of [Claimant]'s statements regarding" her allegation of disabling symptoms and limitations, and that "the objective evidence . . . reflects that claimant is not as limited as alleged." Tr. 28. For instance, in addition to the multiple physical examinations that the ALJ cited that revealed Claimant's strength and balance was intact, the ALJ pointed to multiple records indicating that Claimant consistently sought "conservative treatment, consisting of trigger point injections, physical therapy, chiropractic care, massage and medication management . . ., and declining to pursue more aggressive treatment modalities." Tr. 33; Tr. 1281. *See Thomas v. Comm'r of Soc. Sec. Admin.*, No. 19 CIV. 1177 (GWG), 2020 WL 4757059 (S.D.N.Y. Aug. 18, 2020) ("A conservative treatment regimen, when combined with other similarly conflicting evidence in the record, is substantial evidence sufficient to discount a claimant's statements about the severity of their symptoms.").

Further, for all practical purposes, neither Dr. Guzinksi nor P.A. McGorry offered opinions that the ALJ could be expected to evaluate in terms of consistency or supportability.[9] In October 2019, Dr. Guzinski's office declined to offer an opinion after evaluating Claimant but not performing any follow-up treatment (Tr. 34, discussing Tr. 728), and P.A. McGorry's one page fibromyalgia assessment only identified where Claimant reported pain, and did not offer any functional assessment (Tr. 34, discussing Tr. 1098).

Here, again, Claimant argues that the ALJ's conclusion is erroneous, mainly because he did not consider Dr. Guzinski's assessments of Claimant's condition during earlier periods of treatment. Pl. Mem. of Law at 28. Nevertheless, as with the ALJ's consideration of N.P. Miller's notes, this argument is belied by earlier portions of the ALJ's decision, in which he referenced and discussed Dr. Guzinski's treatment of Claimant in 2017 (Tr. 29, citing Tr. 384–85, 394), and when Claimant "linked again with Dr. Guzinski for chiropractic care" (Tr. 32, referencing Dr. Guzinski's evaluation of Claimant following her motor vehicle accident at Tr. 865–881).

Accordingly, Claimant's third and final argument has no merit.

---

[9] As a chiropractor, Dr. Guzinski is not an "acceptable medical source" under the Commissioner's regulations. *See* 20 C.F.R. § 404.1502(a) (defining "acceptable medical source"). Nevertheless, he is a "medical source," whose treatment records are certainly relevant to the question as to whether the ALJ's conclusions are supported by substantial evidence. *See, e.g., Oscar C. v. Comm'r of Soc. Sec.*, No. 1:20-CV-01294 EAW, 2022 WL 1746774, at *4 (W.D.N.Y. May 31, 2022) ("While Dr. Croce is a chiropractor whose opinion is not entitled to the same weight as a treating physician. . . the Appeals Council's failure to provide any analysis of a chiropractor's opinion can result in a circumstance where the court is unable to conclude that the ALJ's decision is supported by substantial evidence . . .").

CONCLUSION

For the foregoing reasons, it is hereby ORDERED that Claimant Elizabeth Z.'s motion for judgment on the pleadings [ECF No. 14] is denied, the Commissioner's motion for judgment on the pleadings [ECF No. 16] is granted, and the Clerk of Court is directed to close this case.

DATED:      March 10, 2023
            Rochester, New York


                              CHARLES J. SIRAGUSA
                              United States District Judge